# Exhibit 1

(TO PLAINTIFF'S ATTORNEY:   PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT - MOTOR VEHICLE TORT - CONTRACT -
EQUITABLE RELIEF - OTHER)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO. 20   0586

_Vladymir Lamadieu_ , _Plaintiff(s)_

v.

_Prize Logic, Inc. and Ryan Lamirand_ , _Defendant(s)_

### SUMMONS

To the above-named Defendant: _Prize Logic, Inc._

You are hereby summoned and required to serve upon _Raven Moestinger_ plaintiff's attorney, whose address is _50 Congress Street, Ste. 540, Boston, MA 02109_ an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, **JUDITH FABRICANT, Esquire** , at _____ the _7th_

day of _July_ _____, in the year of our Lord two thousand and _20_

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ................................ 20     , I served a copy of

the within summons, together with a copy of the complaint in this action, upon the within-named

defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

..................................................................................................................................................

..................................................................................................................................................

..................................................................................................................................................

Dated:                    , 20        ..................................................................................

**N. B.   TO PROCESS SERVER:-**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON**
**DEFENDANT.**

┌─────────────────────────────────────┐
│                              , 20    │
└─────────────────────────────────────┘

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO. 2082CV586

Vladymir Lamadieu, *Plaintiff*

v.

Prize Logic Inc. and Ryan Lamirand, *Defendant*

SUMMONS
(Mass. R. Civ. P.4)

| **CIVIL ACTION COVER SHEET** | DOCKET NUMBER | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| PLAINTIFF(S): | Vladymir Lamadieu | COUNTY |
|---|---|---|
| ADDRESS: | Needham, MA | Norfolk |

| | | DEFENDANT(S): | Prize Logic, Inc. and Ryan LaMirand |
|---|---|---|---|

| ATTORNEY: | Raven Moeslinger | | |
|---|---|---|---|
| ADDRESS: | Law Office of Nicholas F. Ortiz, P.C. | ADDRESS: | Prize Logic: 25200 Telegraph Rd., Suite 405, Southfield, MI 48033 |
| 50 Congress Street, Suite 540, Boston, MA 02109 | | | LaMirand: 1218 Water Cliff Drive, Bloomfield Hills, MI 48302 |

| BBO: | 687956 | |
|---|---|---|

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A01 | Services, Labor, and Materials | F | ☒ YES  ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?  ☐ YES  ☒ NO

Is this a class action under Mass. R. Civ. P. 23?  ☐ YES  ☒ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................................................................................. $_____
2. Total doctor expenses ............................................................................................................... $_____
3. Total chiropractic expenses ....................................................................................................... $_____
4. Total physical therapy expenses ............................................................................................... $_____
5. Total other expenses (describe below) ..................................................................................... $_____
                                                                                              Subtotal (A): $_____

B. Documented lost wages and compensation to date ...................................................................... $_____
C. Documented property damages to date ......................................................................................... $_____
D. Reasonably anticipated future medical and hospital expenses ..................................................... $_____
E. Reasonably anticipated lost wages .............................................................................................. $_____
F. Other documented items of damages (describe below) ................................................................. $_____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                                                          TOTAL (A-F): $_____

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

Nonpayment of wages in violation of state law

**Signature of Attorney/ Unrepresented Plaintiff: X**                                    **TOTAL: $ > $50K**

                                                                                     Date: Jun 23, 2020

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X**                                    Date: Jun 23, 2020

COMMONWEALTH OF MASSACHUSETTS

**NORFOLK, ss**

SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT

| | |
|---|---|
| VLADYMIR LAMADIEU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C. A. No. |
| v. ) | |
| ) | |
| PRIZE LOGIC, INC. and ) | |
| RYAN LAMIRAND, ) | |
| ) | |
| Defendants. ) | |
| ) | |

2020 JUL 15  AM 11: 03

N. SHERIFF'S HANDS
CASTLE COURT

## COMPLAINT

## I. **INTRODUCTION**

Plaintiff Vladymir Lamadieu brings this action against his former employer, Prize Logic, Inc., and its chief executive officer, Ryan LaMirand, for the non-payment of earned wages, including commissions and vacation pay, in violation of state law.

## II. **PARTIES**

1.     Plaintiff Vladymir Lamadieu resides in Needham, Massachusetts.

2.     Defendant Prize Logic, Inc. (hereinafter, "Prize Logic") is a foreign corporation organized under the laws of Delaware with a usual place of business located at 25200 Telegraph Road, Suite #405, Southfield, Michigan 48033.

3.     Defendant Ryan LaMirand is the chief executive officer of Prize Logic, Inc., and, on information and belief, resides at 1218 Water Cliff Drive, Bloomfield Hills, Michigan 48302.

4.     At all relevant times, Mr. LaMirand served as an officer or agent having the management of Prize Logic and controlled, directed, and participated to a substantial degree in formulating and determining the financial policies of the company.

5.     The Defendants employed the plaintiff.

### III. JURISDICTION AND VENUE

6.     This Court has jurisdiction to address this matter pursuant to M.G.L. c. 149, § 150 and its inherent common law authority.

7.     The plaintiff has filed a complaint regarding this matter with the Massachusetts Attorney General pursuant to M.G.L. c. 149, § 150.

8.     Venue is proper pursuant to M.G.L. c. 223, § 1 because the plaintiff resides in Norfolk County.

### IV. FACTS

9.     Prize Logic is a promotional marketing company operating throughout the United States.

10.    On or around September 24, 2018, Prize Logic hired Plaintiff Vlaydmir Lamadieu.

11.    Mr. Lamadieu's job duties included making sales.

12.    At the outset of his employment, Prize Logic agreed to compensate Mr. Lamadieu with a salary of $120,000 per year, plus commissions.

13.    Prize Logic also agreed to provide Mr. Lamadieu with, on information and belief, two weeks of paid vacation per year.

14.    Prize Logic terminated Mr. Lamadieu's employment on June 22, 2020.

***Unpaid Commissions***

15.    Prize Logic agreed to pay Mr. Lamadieu commissions pursuant to a Sales Compensation Plan (the "Plan"). A true and accurate copy of the Plan is attached hereto as Exhibit A.

2

16.    Per the Plan, Mr. Lamadieu earned a commission of at least .5% on sales to Samsung and 3% on all other sales.

17.    On or about May 8, 2020, Mr. Lamadieu made a sale to Lowe's (the "Lowe's Sale").

18.    The Lowe's Sale was a three-year deal worth an  estimated $3-$5 million per year, or a total of $9-$15 million.

19.    A fully-executed Statement of Work ("SOW" and corresponding Purchase Order ("PO") were issued for the Lowe's Sale before Prize Logic terminated Mr. Lamadieu's employment.

20.    Prize Logic initially assigned the Lowe's account to Mr. Lamadieu in its Salesforce system.

21.    However, Prize Logic subsequently reassigned the Lowe's account to a newly-hired employee.

22.    When Mr. Lamadieu asked Prize Logic why the account was reassigned, he was informed that the change was only temporary.

23.    During the second quarter of 2020, Mr. Lamadieu made approximately $750,000 in sales to multiple other companies, including approximately $600,000 in sales to Samsung.

24.    A fully-executed Statement of Work ("SOW") and corresponding Purchase Order ("PO") and were issued with respect to these sales before Prize Logic terminated Mr. Lamadieu's employment.

25.    All of the foregoing commissions were definitely determined and due and payable.

26.    The commissions were arithmetically determinable, as they were simply a percentage of each sale.

27.    The commissions were also due and payable, as there were no outstanding lawful contingencies barring their payment.

3

28.     While the Plan provides that Mr. Lamadieu must be employed on the date of payout in order to earn his commissions, that constituted an unlawful contingency under the Massachusetts Wage Act, as Prize Logic made it impossible for Mr. Lamadieu to achieve the contingency by terminating his employment and by otherwise evading the requirements of the statute.

29.     In total, as a result of the Lowe's Sale and other sales Mr. Lamadieu made during the second quarter of 2020, he earned between approximately $277,500 and $457,500 in commissions.

30.     However, Prize Logic failed to pay Mr. Lamadieu his earned commissions within six days of the pay period in which they were earned.

31.     After the Lowe's Sale, Prize Logic began inventing a reason to terminate Mr. Lamadieu's employment in order to avoid paying him his earned commissions.

32.     Prize Logic settled on falsely claiming that Mr. Lamadieu's work performance was poor.

33.     On June 12, 2020, Prize Logic terminated Mr. Lamadieu's employment.

34.     Prize Logic terminated Mr. Lamadieu's employment without cause.

35.     In fact, Prize Logic terminated Mr. Lamadieu's employment in order to avoid paying him his commissions on the Lowe's Sale.

*Unpaid Salary and Vacation Pay*

36.     As of the date of his termination, Mr. Lamadieu had accrued and not used at least 88.9 hours of paid vacation time, the equivalent of approximately $5,128.85.

37.     Prize Logic failed to pay Mr. Lamadieu his earned vacation pay on the date of his termination.

38.     Prize Logic also failed to pay Mr. Lamadieu two weeks of earned salary on the date of his termination, instead paying his salary on the following day.

4

39.     To date, Prize Logic owes Mr. Lamadieu his unpaid vacation and interest on his late-paid salary.

## V. **CAUSES OF ACTION**

### **COUNT I**

### **NON-PAYMENT OF WAGES IN VIOLATION OF M.G.L. c. 149, §§ 148, 150**

40.     The plaintiff hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

41.     M.G.L. c. 149, § 148 mandates the timely payment of all earned wages.

42.     Section 148 provides in relevant part:

> [e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week . . . but . . . any employee discharged from such employment shall be paid in full on the day of his discharge.

> M.G.L. c. 149, § 148

43.     The defendants failed to pay Mr. Lamadieu the full amount of his earned wages, including salary, commissions, and vacation pay, when the same became due and payable.

44.     The defendants' failure to comply with M.G.L. c. 149, §§ 148, 150 entitles Mr. Lamadieu to recover treble damages, interest, reasonable attorney's fees, and costs pursuant to M.G.L. c. 149, § 150.

5

## COUNT II

### BREACH OF CONTRACT
### (Against Prize Logic Only)

45.     The plaintiff hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

46.     The defendant and the plaintiff were parties to a contract under which the defendants agreed to and had a duty to pay the plaintiff wages.

47.     The defendant breached its contractual duty by failing to pay the plaintiff the wages due to him pursuant to the terms of the contract.

48.     The defendant's breach was material.

49.     As a result of the defendant's breach, the plaintiff suffered damages.

50.     The defendant's breach was both the proximate and actual cause of the plaintiff's damages.

51.     The defendant's breach of contract entitles the plaintiff to recover his contract damages, including but not limited to, incidental and consequential damages, and pre-judgment interest from the date of the breach.

## COUNT III

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Prize Logic Only)

52.     The Plaintiff hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

53.     Defendant terminated Plaintiff's employment in bad faith in an effort to deprive him of earned commissions, including commissions from the Lowe's Sale.

54.     By terminating Plaintiff before his commissions payout date and doing so to avoid paying

Plaintiff his earned commissions, the Defendant breached the implied covenant of good faith and

fair dealing implicit in all contracts.

55.     The Defendant's breach entitles the plaintiff to recover his damages, including, but not

limited to, the amount of the unpaid commissions.

**COUNT IV**

**UNJUST ENRICHMENT**
**(Against Prize Logic Only)**

56.     The plaintiff hereby realleges and incorporates by reference the facts and allegations

contained in the preceding paragraphs of this pleading as if fully set forth herein.

57.     The defendant received the benefit of the plaintiff's time, work, and professional skill

without compensating the plaintiff for the same and as he reasonably expected.

58.     The defendant was unjustly and unfairly enriched by the amount of the unpaid wages,

any profits it made as a result of the plaintiff's work, and by the amount of taxes, business costs,

and expenses it passed on to the plaintiff.

59.     The defendant benefited financially from its failure to pay the plaintiff wages and, as a

result, the plaintiff suffered damages.

WHEREFORE, the plaintiff requests that the Court enter final judgment against the

defendants, jointly and severally, awarding the plaintiff:

1.  Treble damages, interest, reasonable attorney's fees, and costs pursuant to M.G.L. c. 149, § 150 for unpaid wages;

2.  All legally cognizable damages for the defendant's breach of contract;

3.  All legally cognizable damages for the defendant's breach of the covenant of good faith and fair dealing;

4.  Equitable damages for the defendant's unjust enrichment; and

7

5.   Such other relief that the Court deems just.

## JURY DEMAND

The plaintiff demands a trial by jury for all claims.

VLADYMIR LAMADIEU,
by his attorneys,

Raven Moeslinger (BBO# 687956)
Nicholas F. Ortiz (BBO# 655135)
Law Office of Nicholas F. Ortiz, PC
50 Congress Street, Suite 540
Boston, MA 02110
(617) 338-9400
rm@mass-legal.com

Dated:   June 23, 2020

8

# EXHIBIT A

PL CONFIDENTIAL

January 31, 2020

 PRIZELOGIC

ENGAGEMENT BEYOND THE PRIZE

# SALES COMPENSATION PLAN

## BUSINESS DEVELOPMENT - CY2020

**CONFIDENTIAL**

PL CONFIDENTIAL                                                    January 31, 2020

## A. PLAN OVERVIEW

| | |
|---|---|
| **PLAN OBJECTIVES** | PrizeLogic is pleased to present its 2020 Sales Compensation Plan (the **"Plan"**). The Plan has the following objectives to align incentive pay with PrizeLogic's goals: |

- To generate revenue growth and to increase market penetration and share.
- To reward those who achieve and exceed company, customer and job related targets.

**PLAN YEAR**

The term of the Plan is January 1, 2020 through December 31, 2020 (the **"Plan Year"**).

**ELIGIBILITY**

Eligibility for participation is limited to Associates directly responsible for sales (each a **"Salesperson"**). To participate, each Salesperson must sign a copy of the Plan and return it to the General Counsel. Any Salesperson hired after the start of the Plan Year may participate in the Plan on a prorated basis based on the Salesperson's date of employment.

**SALES COMPENSATION COMPONENTS**

The Individual Plan section of this document describes the responsibilities and assigned accounts/markets for you in 2020 as well as the rates and targets for your individual plan (**"Individual Plan"**). These responsibilities and assignments encompass maximizing profitable sales opportunities for PrizeLogic as well as achieving goals as determined by the SVP of Business Development.

Compensation is designed to specifically incentivize high performance in the assignments and responsibilities listed in the Individual Plan. For 2020, your Individual Plan will consist of three types of compensation in addition to your base salary. These compensation types are:

Plan Incentive Commission: the commission payment offered against the base net bookings target assigned.

Accelerated Incentive Commission: the commission payment offered against net bookings over and above the base net bookings target assigned.

Product Based Incentives: The payment offered for selling particular products and/or services.

**GENERAL DETERMINATION AND PAYMENT RULES**

Commissions are considered earned when both (i) a net booking is achieved and (ii) the Salesperson is employed at PrizeLogic on the Payment Date (as defined below). A net booking is achieved when a fully-executed Statement of Work (SOW) and a corresponding Purchase Order (PO) are issued, received and recorded in Salesforce less any prizing and pass-through costs and expenses. An illustration of what is removed to calculate a net booking is contained in the Appendix of this document. This detail will also be available for each opportunity within the Salesforce system.

Earned commissions will be tracked by quarter and reported and paid at the end of the month after the end of the quarter (the **"Payment Date"**). For example, Q1 net bookings will be calculated during the month of April and added to the April 30 payroll. Commission payments are subject to appropriate federal, state, and local withholdings.

Refer to section B for policy information regarding the payment of commissions in the event of a leave or separation of employment.

PL CONFIDENTIAL
January 31, 2020

## B. PLAN POLICIES AND PRACTICES

| | |
|---|---|
| **PLAN MODIFICATIONS** | PrizeLogic reserves the right to amend, revoke, or modify the Plan at any time. Written notice of any and all changes which affect an Individual Plan will be distributed in writing in a reasonable manner. |
| **CHANGES IN ASSIGNMENTS OR TARGETS** | Occasionally, PrizeLogic may determine a need to reassign accounts/markets and/or corresponding targets. This may be done at the discretion of the SVP of Business Development or other members of Senior Leadership. Notification of such changes will be given prior to the effective date. |
| **COMMISSION OVERPAYMENTS** | As client work is completed and reconciled, PrizeLogic may determine that a cancellation of all or part of a program at any point after the SOW is signed and the PO is received if required or non-payment could result in an over-payment to the Salesperson. PrizeLogic reserves the right to recoup and reconcile compensation at its sole discretion. |
| **DISCRETIONARY CAP** | PrizeLogic reserves the right to modify or cap Accelerated Incentive Commissions at its sole discretion once Accelerated Incentive Commissions are equal to or greater than the commissions paid for Plan Incentive Commissions. |
| **RECURRING REVENUE (RENEWALS) AND MULTI YEAR DEALS** | For the calendar year 2020, each Salesperson will get credit against their Individual Plan only one time for any annual renewal that may be signed more than once during the year. The first renewal will count toward the Salesperson's 2020 Plan and will be paid in accordance with the terms of the 2020 Plan. The second renewal will count toward the Salesperson's 2021 Plan and paid according to the normal payment schedule. |
| | For any multi-year deal that is signed, the booking and commission will be awarded coinciding with the year of the contract. For example, an SOW for a two year deal is executed in 2020; the amount attributed to 2020 revenue will be added to the Salesperson's net bookings target for 2020 and commissions will be paid accordingly. The second year will be counted against the base plan for 2021 and commissions will be paid accordingly. |
| **ADDITIONAL EARNINGS FOR SPECIFIC PRODUCTS OR SERVICES** | Sales of the Audience Activation product will be awarded as follows: If the Salesperson is earning against their base plan, the award will be an incremental 5%. If the Salesperson has already achieved their base plan the award will be paid an incremental 3%. Any Sales of Audience Activation product not directly attributable to an assigned account will be evenly divided across the sellers active during a full calendar month. |
| | Sale of a "New Recurring Contract" will be awarded as follows for the initial term: If the Salesperson is earning against their base plan, the award will be an incremental 2%. If the Salesperson has already achieved their base plan the award will be paid an incremental 1%. |
| | In 2020, a "New Recurring Contract" is a deal of 12 months or longer that involves an auto renewal of Engage platform licenses. The determination of earnings on any deal that meets some but not all of the identified criteria is at the discretion of the CEO. |

**ADDENDUMS**

Addendums would append net bookings numbers and will be reflected in quarterly commission payouts based on the date of each addendum. Addendum net bookings will follow the same process requiring a signed SOW and PO as applicable.

Any remaining payments and/or addendums from 2016-2018 programs will continue to be paid according to the rules of the 2018 Sales Compensation Plan.

**TERMINATIONS AND LEAVES**

Termination by Employee: When a Salesperson terminates his or her employment, that Salesperson is no longer entitled to any unpaid Plan Incentive Commissions, Accelerated Incentive Commissions, or Product Based Incentives for any net bookings achieved during his or her employment. In order to be eligible to receive incentive compensation for any quarter, the Salesperson must be an Associate of the company on the on the final payroll date 30 days after the end of the quarter, the date on which the incentive amounts are calculated and deemed earned.

Termination by PrizeLogic for cause: When a Salesperson's employment is terminated by PrizeLogic for cause, that Salesperson is no longer entitled to any Plan Incentive Commissions, Accelerated Incentive Commissions, or Product Based Incentives for any net bookings achieved during his or her employment.

Termination by PrizeLogic without cause: When a Salesperson's employment is terminated by PrizeLogic without cause (e.g., a layoff), the Salesperson's final commissions due will be calculated pursuant to the terms of the Plan, and 50% of such earned commissions will be payable to that Salesperson pursuant to the regular payment schedule.

Leave of Absence: If a Salesperson is on an approved paid or unpaid (non-PTO) leave and a net booking is finalized according to the terms of the Plan, PrizeLogic will pay that Salesperson commission on 40% of the net booking in accordance with the commission payment calculation and pay date. The Salesperson will also get 40% of the value of the net booking applied toward his or her annual target. The inheriting active Salesperson will be paid commission on 60% of the net booking.

NO GUARANTEE OF EMPLOYMENT: Nothing in the Plan changes the normal employer/employee relationship and it should not be interpreted as a guarantee or contract of employment. Both PrizeLogic and the Salesperson acknowledge the "at will" employment agreement as outlined in the employee handbook and any other employment agreements. In addition, payment of an incentive shall not be construed as an indication that overall job performance is satisfactory.

**INTERPRETATION AND ADMINISTRATION**

Eligibility, participation, and incentive compensation levels are reviewed and communicated each calendar year and are not automatically carried over from the year prior. This Sales Compensation Plan will be interpreted and administered in accordance with Michigan law, not taking into account any choice of law rules. PrizeLogic retains the sole discretion to interpret and administer the Plan.

**PLAN PAYMENT GUIDELINES**

Designation of a Salesperson as incentive eligible does not guarantee that Salesperson a right to an incentive under any circumstances.

PL CONFIDENTIAL                                                  January 31, 2020

PrizeLogic reserves the right to adjust territories and/or account assignments and related goals and plan provisions during the year based on overall business or individual circumstances.

Each Salesperson should check his or her paystub each pay period. If there is a question or concern about an overpayment or an underpayment, it must be brought to the attention of Human Resources before the last day of the quarter in which the commission payment in question was received. Failure to do so will result in waiver of any claim of any allegedly underpaid commission. However, PrizeLogic reserves the right to recover any overpayments from future payroll distributions in accordance with Michigan law.

**CONFIDENTIALITY**          PrizeLogic Associates are required to comply with all confidentiality agreements, including but not limited to, the confidentiality agreement signed upon hire at PrizeLogic.

Sales data, records, and reports are both confidential and proprietary information of PrizeLogic. This information will be kept confidential and will only be disclosed to Associates who need the information.

## INDIVIDUAL PLAN TERMS

Plan for Vladmir Lamdieu:

Net Bookings Target: $1,448,000 for Core and $4,764,712 for Tier 1 Client (Samsung)

Q1:  $231,500 / $1,992,547

Q2:  $356,500 / $1,017,603

Q3:  $476,500 / $811,475

Q4:  $383,500 / $943,087

Total: $6,212,712

Named Accounts and your Net Bookings Target can be found in your account plan as well as in Salesforce

### Total Compensation Opportunity

| Component | Base Plan Rate | Accelerator Rates | Earnings at 100% achievement | Sample Earnings Assuming a 10% over-achieve and $100k of Audience Activation / New Recurring Contracts |
|---|---|---|---|---|
| Base Salary | $120,000 | $120,000 | $120,000 | $120,000 |
| Plan Incentive Commission | 3.0% | 7.0% | $43,440 | $53,576 |
| Tier 1 Commission (Samsung) | 0.5% | 3.5% | $23,824 | $40,500 |
| Audience Activation | 5.0% | 3.0% | | $3,000 |
| New Recurring Contracts | 2.0% | 1.0% | | $1,000 |
| TOTAL | | | $187,264 | $218,076 |

PL CONFIDENTIAL                                                    January 31, 2020

## ACKNOWLEDGMENT OF RECEIPT

I, _____, acknowledge receipt of this Plan Document and accept the compensation plan terms and conditions for 2020. I have had the opportunity to review this document in full and the chance to raise questions and concerns.

_____
Salesperson Signature

_____
Date

PL CONFIDENTIAL

January 31, 2020

## APPENDIX

For all services except for hosting or those in the procurement section, target net bookings are the total amount for that service as stated on the SOW. For hosting and procurement services, the development team (for hosting) or the fulfillment team (for procurement) will provide quotes for these services. Only the amount charged over and above the quote received from these teams will be counted towards target net bookings.

| Services | Markup from SOW vs Quote | Use Full SOW Estimate |
|---|---|---|
| **Legal Services** | | |
| (1)  Bonding/Registration | | x |
| (1)  Translation Services | | x |
| (1)  Outside Legal (International) | Case-By Case | |
| | | |
| **Administration Services** | | |
| Judging | | x |
| Moderation | | x |
| Customer Support/Weekend Support | | x |
| | | |
| **Drawing Administration** | | |
| (1)  Background Checks | | x |
| Affidavit of Eligibility | | x |
| Trip Companion Release | | x |
| IRS 1099's | | x |
| Winner Selection/Communication | | x |
| Social Scrapping | | x |
| PO Box Set Up/Management | | x |
| Winner/Award Letter | | x |
| Redemption Portal Set Up | | x |
| | | |
| **Procurement Services** | | |
| (3)  Prize Funding | x | |
| (1)  Prize Procurement  and Trip Management | x | |
| (1)  Shipping/Handling (postage) | x | |
| (1)  Kit packing & Storage | x | |
| (1)  Print Production | x | |
| (1)  Warehousing/Receiving | x | |
| | | |
| **Services (Third Party)** | | |
| (1)  SMS | | x |
| (1)  Emails | | x |
| (4)  Hosting | x | |
| OCR (Blink) | x | |
| **Creative Services** | | |
| (2)  Creative Services | | x |
| | | |
| **Agency Commission** | | |
| (5)  Agency Commission | x | |

(1)  If services are over $10K, the estimated expenses will be removed from bookings
(2)  For Creative Services that are "Skilled" based, the estimated expenses will be removed from bookings
(3)  Prize Funds will be removed from bookings / pass-through expenses
(4)  For any outside hosting (i.e. Azure, Pixfusion) full amount will be removed from bookings /pass-through expenses
(5)  Agency Commissions will be calculated (less expenses) and removed from bookings
      (MARS Agency, Nomadic, Marketing Werks, Fusion and Just Marketing)

**MillerCoors - Remove B&R Filings, Procurement & Procurement Services**

| | |
|---|---|
| Original date: 2/7/2018 | |
| Updated date: 1/15/2020 | |